# IN THE UNITED STATES COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **HAROLD HOWARD** : | |
| **Plaintiff,** : | |
| : | |
| **v.** : | **CIVIL ACTION NO. 18-2209** |
| : | |
| **CHESTER COUNTY OFFICE OF** : | |
| **JUVENILE PROBATION AND PAROLE, et al.,** : | |
| **Defendants.** : | |

## MEMORANDUM OPINION

**Rufe, J.**                                                    **March 15, 2019**

Plaintiff Harold Howard, proceeding *pro se*, asserts constitutional, statutory, and common law claims against Defendants based on their alleged failure to adequately notify Plaintiff of the complaint made against his then-minor son after his son damaged a car, and Defendants' use of private information related to his son's alleged disability during the resulting juvenile proceedings. All Defendants have moved to dismiss Plaintiff's Third Amended Complaint.[1] Each of these motions to dismiss, except for the School District's motion, has been converted to a motion for summary judgment.[2] For the reasons set forth below, the Court will grant the motions for summary judgment and the School District's motion to dismiss.

## I.     BACKGROUND[3]

Plaintiff's claims arise from Defendants' actions toward, and treatment of, Plaintiff and his teenaged son, D.H., in the juvenile proceedings brought against D.H. for damaging a car. Upon D.H.'s arrest in Chester County, Pennsylvania, police officers from Defendant Easttown

---

[1] Plaintiff's Third Amended Complaint is the operative complaint.

[2] [Doc. No. 95].

[3] For purposes of the summary judgment motions, the facts are undisputed or interpreted in the light most favorable to Plaintiff. Any factual disputes are noted in the discussion where relevant.

Township Police Department held D.H. at the scene while they called the home where Plaintiff, D.H., and Beverly Miles (D.H.'s grandmother and Plaintiff's mother) lived.[4] Plaintiff was not home, but Miles responded to the scene and brought D.H. home to 1000 Townsend Circle, Wayne, Pennsylvania.[5] Plaintiff asserts that Miles was later contacted by the police, who told her that if she did not pay for the damage that D.H. caused to the car, charges would be brought against D.H.[6] Miles was unable to pay for the damage. Plaintiff complains that, because he was never personally notified of this complaint against his son, he was unable to pay the injured party himself and was therefore deprived of the opportunity to prevent charges from being filed against his son.[7]

Plaintiff claims that the resulting juvenile proceedings against his son were faulty because he and his wife, Andrea Howard, who is D.H.'s mother, were never notified of the proceedings against their son.[8] He asserts that Defendant Chester County Office of Juvenile Probation and Juvenile Court Probation Officer Melissa Creedon improperly issued a summons for Miles, rather than Plaintiff, to bring D.H. to court for juvenile proceedings. In response to the summons, Miles sent a letter to Creedon, explaining that she was not D.H.'s guardian and that Plaintiff was, but this letter did not provide contact information for Plaintiff.[9] Plaintiff alleges that his sister, Kimberly Brunson, also called Creedon with the same information.[10] Plaintiff asserts that he and

---

[4] Third Am. Compl. [Doc. No. 54] ¶¶ 14-15. Plaintiff asserts that he, Beverly Miles, and D.H. live at 1000 Townsend Circle, Wayne, PA, which is in Chester County. *Id.* ¶¶ 5, 15.

[5] *Id.* ¶ 15.

[6] *Id.* ¶ 16.

[7] *Id.* ¶ 33.

[8] *Id.* ¶ 19.

[9] Plaintiff appears to allege in his Third Amended Complaint that Miles's letter to Creedon stated that Plaintiff lived at the address Plaintiff shared with Miles. *Id.* ¶¶ 22. In fact, this letter, appended by Defendants, states that the location of Plaintiff is unknown. Def's. Ex. 1 [Doc. No. 42] ¶ 4.

[10] Third Am. Compl. [Doc. No. 54] ¶ 23.

D.H. were in Maryland at the time the summons was issued, and that Kimberly Brunson and her husband, John Brunson, brought D.H. from Maryland to Pennsylvania to attend the initial hearing "against [Plaintiff's] wishes."[11]

Plaintiff asserts that Defendants improperly allowed the proceedings to continue against his son, despite knowing that Plaintiff should have been properly and formally notified of them. Plaintiff claims that, at the first hearing, Defendant Creedon hid the fact that Miles was not D.H.'s guardian from the hearing officer and proceeded with the case knowing that Plaintiff was not personally notified. At the second hearing, Plaintiff claims that Creedon, along with Defendant Keith DiFabio, a lawyer from Defendant law firm Platt, DiGiorgio and DiFabio, failed to inform the hearing officer that Plaintiff was D.H.'s guardian.[12]

In addition to his claims related to lack of notice, Plaintiff asserts that Defendant Tredyffrin Easttown School District ("the School District") improperly provided Defendant Chester County Office of Juvenile Probation with information related to D.H.'s Individualized Education Program ("IEP"). Specifically, Plaintiff alleges that, without his consent, Miles signed off on the School District's continued use of an IEP for D.H., as well as the release of this IEP to Creedon for use in D.H.'s juvenile proceedings. According to Plaintiff, this was improper because Miles, D.H.'s grandmother, is a "third party," and as D.H.'s father, Plaintiff should have been consulted on decisions related to D.H.'s IEP.[13]

Plaintiff, through his Third Amended Complaint, asserts causes of action under the United States Constitution, federal statutes, the Pennsylvania Constitution, and common law. Plaintiff also filed for preliminary injunctive relief, seeking to enjoin Defendants Chester County

---

[11] *Id.* ¶ 25.

[12] *Id.* ¶ 31-32.

[13] *Id.* ¶ 34.

Office of Juvenile Probation and Parole, and Probation Officers Melissa Creedon and Jamie Durning, from taking any further actions against his son, D.H.[14] The Court held a hearing on August 14, 2018, at which witnesses, including Plaintiff, Beverly Miles, and Andrea Howard, testified.

In contrast to Plaintiff's conclusory allegations against Defendants, the evidence and testimony presented at the hearing on the motion for a preliminary injunction and documents appended to the parties' briefs, show that Plaintiff was afforded every opportunity to participate in his son's hearings but that he refused to do so. While Plaintiff testified that he was upset that he was not being "involved in any of the decisions that have been made" regarding his son, he also testified that he decided, on his own, to not be involved because he was "angry about the fact that [he] was never notified" of his son's arrest.[15] In particular, Plaintiff admitted that he knew about most, if not all of D.H.'s hearings, including the initial intake hearing,[16] which Andrea Howard explained "everybody" attended including herself, D.H.'s aunt and uncles, and Miles.[17] Although Plaintiff alleges that the Office of Juvenile Probation and individual probation officers did not try to involve D.H.'s parents in the matter, Andrea Howard testified that, at that initial hearing, the officers "wanted to know who was all in the room," and that "they knew [she] was there, they knew [she] was a parent."[18] Andrea Howard further explained that she gave the Office of Juvenile Probation her contact information at that same hearing, after which she

---

[14] [Doc. Nos. 3 and 6].

[15] Tr. Hr'g on Prelim. Inj. [Doc. No. 53] at 84-85.

[16] *Id.* at 47–51, 58–59, 60–64.

[17] *Id.* at 95.

[18] *Id.* at 93, 108.

received notice for each of D.H.'s court dates.[19] Both Andrea Howard and Miles testified that

they attended all but one court date, and Plaintiff admitted that his sister and brother-in-law,

despite having no more information than he did, went to at least one hearing and hired D.H. an

attorney.[20]

Plaintiff, on the other hand, did not attend a single hearing, despite being aware of them,

and even sought to prevent his son from attending the initial intake hearing; D.H. was only able

to attend because Plaintiff's sister brought him there "against [Plaintiff's] will and knowledge."[21]

Additionally, Plaintiff never provided the Office of Juvenile Probation with his contact

information as Andrea Howard had done, and instead asked Miles to write a letter to the Office,[22]

which stated D.H. and Plaintiff moved and their location was "unknown at th[at] time."[23] Even

when the Office of Juvenile Probation ultimately obtained Plaintiff's contact information and

sent him formal notice, he refused to attend his son's hearing, because he "didn't want to be

involved," in the process he determined was "illegal."[24]

All Defendants moved to dismiss the Third Amended Complaint under Federal Rule of

Civil Procedure 12(b)(6) for failure to state a claim, to which Plaintiff has responded. On

December 7, 2018, the Court directed the parties to file statements as to whether any of the

motions to dismiss should be converted to motions for summary judgment in order to allow the

Court to consider the evidence and testimony presented at the hearing on the motion for a

preliminary injunction. All parties, except Plaintiff, filed a statement as directed by the Court. All

---

[19] *Id.* at 99-11, 104. Plaintiff also provided these notices, addressed to Andrea Howard, at the hearing on the motion for preliminary injunction.

[20] *Id.* at 85-86, 92, 99, 126.

[21] *Id.* at 48.

[22] *Id.* at 50.

[23] Def's. Ex. 1 [Doc. No. 42] ¶ 4; *see also* Third Am. Compl. [Doc. No. 54] ¶ 22.

[24] Tr. Hr'g on Prelim. Inj. [Doc. No. 53] at 58.

Defendants, except the School District, requested that their motions be converted to summary judgment motions, and on January 3, 2019, all motions, excluding the School District's motion, were so converted. The parties were then permitted to submit materials in support of, or in opposition to, summary judgment.[25]

## II.    STANDARD OF REVIEW

### A.  Motion for Summary Judgment

A court will award summary judgment on a claim or part of a claim where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[26] A fact is "material" if resolving the dispute over the fact "might affect the outcome of the suit under the governing [substantive] law."[27] A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[28]

In evaluating a summary judgment motion, a court "must view the facts in the light most favorable to the non-moving party," and make every reasonable inference in that party's favor.[29] Further, a court may not weigh the evidence or make credibility determinations.[30] Nevertheless, the party opposing summary judgment must support each essential element of the opposition with concrete evidence in the record.[31] "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."[32] This requirement upholds the "underlying purpose of summary judgment [which] is to avoid a pointless trial in cases where it

---

[25] [Doc. No. 95].

[26] Fed. R. Civ. P. 56(a).

[27] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[28] *Id.*

[29] *Hugh v. Butler Cty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005).

[30] *Boyle v. Cty. of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998).

[31] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

[32] *Anderson*, 477 U.S. at 249-50 (internal citations omitted).

is unnecessary and would only cause delay and expense."[33]  Therefore, if, after making all reasonable inferences in favor of the non-moving party, the court determines that there is no genuine dispute as to any material fact, summary judgment is appropriate.[34]

## B. Motion to Dismiss

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"[35] and "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element" of a claim.[36] Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact) . . . ."[37] The question is not whether the plaintiff ultimately will prevail but whether the complaint is "sufficient to cross the federal court's threshold."[38]

In evaluating a challenged complaint, a court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."[39] Although the

---

[33] *Walden v. Saint Gobain Corp.*, 323 F. Supp. 2d 637, 641 (E.D. Pa. 2004) (citing *Goodman v. Mead Johnson & Co.,* 534 F.2d 566, 573 (3d Cir. 1976)).

[34] *Wisniewski v. Johns–Manville Corp.*, 812 F.2d 81, 83 (3d Cir. 1987).

[35] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)); *see also Matrixx Initiatives, Inc. v. Siracusano*, 131 S. Ct. 1309, 1323 (2011).

[36] *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (citing *Twombly*, 550 U.S. at 556) (internal quotation marks omitted).

[37] *Twombly*, 550 U.S. at 555 (citations omitted).

[38] *Skinner v. Switzer*, 562 U.S. 521, 530 (2011) (citation omitted). At the motion to dismiss stage, a court determines only whether a plaintiff will be permitted to seek evidence in support of the claims in the complaint. *See Twombly*, 550 U.S. at 556, 558-59.

[39] *Phillips*, 515 F.3d at 233 (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (quotation marks omitted).

Court must draw all reasonable inferences from the allegations in favor of the plaintiff,[40] it "need not accept as true 'unsupported conclusions and unwarranted inferences,'"[41] or the plaintiff's "bald assertions" or "legal conclusions."[42]

In evaluating a motion to dismiss, courts may not consider matters extraneous to the pleadings, other than "document[s] integral to or explicitly relied upon in the complaint."[43] Accordingly, this Court analyzes the School District's motions to dismiss without consideration of the testimony presented at the hearing on Plaintiff's motion for a preliminary injunction.

## III.    DISCUSSION

### A. SUMMARY JUDGMENT MOTIONS

#### 1.  Federal Constitutional Claims Under 42 U.S.C. § 1983

Plaintiff asserts claims pursuant to 42 U.S.C. § 1983 for violations of the First, Fourth, Fifth, Eighth, Ninth, and Fourteenth Amendments of the United States Constitution against the Easttown Township Police Department, Officer Kevin Price, the Chester County Office of Juvenile Probation, and Juvenile Court Probation Officers Creedon and Durning, in their individual and official capacities. Plaintiff separately asserts violations of the Sixth Amendment against the Platt, DiGiorgio and DiFabio Law Firm and attorneys Vincent DiFabio and Keith DiFabio.

---

[40] *Revell v. Port Auth. of N.Y. & N.J.*, 598 F.3d 128, 134 (3d Cir. 2010).

[41] *Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 183-84 (3d Cir. 2000) (quoting *City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 263 n.13 (3d Cir. 1998)).

[42] *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429 (3d Cir. 1997) (quoting *Glassman v. Computervision Corp.*, 90 F.3d 617, 628 (1st Cir. 1996)) (quotation marks omitted).

[43] *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1426 (quoting *Shaw v. Digital Equipment Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)); *see also Carson v. Perry*, No. 93–4375, 1993 WL 455624, at *1 (5th Cir. Oct. 22, 1993) (holding that where a magistrate judge considered testimony given at an evidentiary hearing, the magistrate's decision must be regarded as a grant of summary judgment rather than a grant of a motion to dismiss).

As an initial matter, Plaintiff's claim under the Eighth Amendment must be dismissed for lack of standing, because the injuries Plaintiff refers to are not personal to Plaintiff.[44] Plaintiff alleges that his rights under the Eighth Amendment were violated by Defendants' actions that injure D.H., including "scarring him for life," making him miss his senior prom, incarceration, and "other forms of punishment."[45] In general, "[i]njuries to a parent resulting from violations of their child's constitutional rights are not sufficiently personal for purposes of the parent's individual standing."[46] As Plaintiff has only alleged injury to his son, and not to himself, he cannot sue based on this alleged harm.

Additionally, all of Plaintiff's constitutional claims against the Chester County Office of Juvenile Probation, and the probation officers in their official capacity, must be dismissed because these Defendants are entitled to Eleventh Amendment immunity. The Eleventh Amendment provides immunity to "subunits of the State," which, according to the Third Circuit, includes the County Probation and Parole Departments.[47] Because a suit against a state officer in his or her official capacity is "no different from a suit against the state itself," the probation officers are also afforded this Eleventh Amendment immunity.[48] This immunity shields the Chester County Office of Juvenile Probation and the probation officers in their official capacity from Plaintiff's § 1983 claims.[49]

---

[44] *See Valley Forge Christian Coll. v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 472 (1982).

[45] Third Am. Compl. [Doc. No. 54] ¶ 50.

[46] *Delbridge v. Whitaker*, No. 2:09–4227, 2010 WL 1904456, at *3 (D.N.J. May 10, 2010) (citing *Hannah v. City of Dover*, 152 F. App'x 114, 116–17 (3d Cir. 2005)).

[47] *Perez v. Borough of Berwick*, 507 Fed. App'x 186, 189-90 (3d Cir. 2012).

[48] *Hafer v. Melo*, 502 U.S. 21, 26 (1991) (quoting *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989)).

[49] *Quern v. Jordan*, 440 U.S. 332, 342 (1979) (holding that 42 U.S.C. § 1983 does not override Eleventh Amendment immunity). This Eleventh Amendment immunity also extends to Plaintiff's claims under the Pennsylvania Constitution and under §§ 1985 and 1986, although those claims fail against all Defendants for unrelated reasons as well. *See Irizarry v. Com. Of Pa., Dept. of Transp.*, No. A. 98–6180, 1999 WL 269917, at *5

The Court will address the remaining claims against Defendants who have moved for summary judgment, including Creedon and Durning in their individual capacities.

a.  *Easttown Township Police Department and Officer Kevin Price*

Plaintiff claims that the police violated his constitutional rights when they failed to notify Plaintiff that his son was accused of damaging a car. Specifically, Plaintiff alleges that this lack of notice deprived him of the ability to reconcile with the aggrieved party.[50] Defendant Police Department and Officer Price argue that Plaintiff has failed to specify what recognized right or privilege the police violated.[51]

Plaintiff has not alleged a violation of his constitutional rights. According to Plaintiff's own allegations, the police called the home where D.H. and Plaintiff resided[52] and then released D.H. to his grandmother to take D.H. to that home, rather than taking him into juvenile detention. According to Miles, when she picked up D.H., she told the police "that [she] was the grandmother and [D.H.] did live with [her]."[53] Additionally, Plaintiff has not identified a recognized constitutionally protected right to reconcile with the aggrieved party. Therefore, Plaintiff may not maintain a § 1983 action based on such a claim.[54]

---

(E.D. Pa. Apr. 19, 1999) ("The Commonwealth has not expressly waived its Eleventh Amendment immunity to be sued in federal court under the Pennsylvania Constitution or for intentional torts."); *Collins v. Sload*, 212 Fed. App'x 136, 140 n.5 (3d Cir. 2007) ("Eleventh Amendment immunity provided the defendants a similar shield against the claims for damages against them in their official capacities under §§ 1983, 1985, & 1986.").

[50] Third Am. Compl. [Doc. No. 54] ¶ 37.

[51] Mem. Supp. Mot. Dismiss [Doc. No. 59] at 4.

[52] Plaintiff alleges in his Third Amended Complaint that the police "contacted the home and plaintiff was not home but Beverly Miles … was home and did come to the scene." Third Am. Compl. [Doc. No. 54] ¶ 15. At the hearing, however, Plaintiff alleged that police "called [Miles's] cell phone, because [the officer] was given that number, I believe, by my son." Tr. Hr'g on Prelim. Inj. [Doc. No. 53] at 38.

[53] Tr. Hr'g on Prelim. Inj. [Doc. No. 53] at 122.

[54] To sustain a cause of action under § 1983, the plaintiff must allege that the individual deprived him of a federal right under the color of state or territorial law. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980).

### b. *Platt, DiGiorgio and DiFabio Law Firm, Vincent DiFabio, and Keith DiFabio*

Plaintiff states that attorneys Vincent DiFabio and Keith DiFabio (privately retained by Miles, Kimberly Brunson, and John Brunson), as well as their law firm, violated Plaintiff's constitutional rights, including his Sixth Amendment right to counsel, by failing to inform the hearing officer at D.H.'s juvenile proceedings that Plaintiff, not Miles, was D.H.'s guardian.[55] Because the attorneys did not act under color of state law, a § 1983 suit cannot be brought against them.[56]

### c. *Probation Officers Melissa Creedon and Jamie Durning in Their Individual Capacities*

Plaintiff alleges that Creedon and Durning, in their individual capacities, violated his rights under the United States Constitution when they failed to formally notify Plaintiff of the complaint against his son and allowed the juvenile proceedings against his son to continue despite this lack of notice. Defendants Creedon and Durning argue that qualified immunity shields them from these claims.

Qualified immunity protects government officials from liability "for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[57] A "clearly established right" is one that is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right."[58] To be sufficiently clear, existing precedent must place the statutory or

---

[55] Third Am. Compl. [Doc. No. 54] ¶¶ 46c, 46d, 51.

[56] 42 U.S.C. § 1983 (imposing liability on a party who, acting under the color of law, deprives another individual of rights, privileges, or immunities); *Steward v. Meeker*, 459 F.2d 669, 669–70 (3d Cir. 1972) (privately retained counsel is not acting under color of state law when representing a client); *Butler v. Silvis*, No. 09–1394, 2009 WL 4723295, at *2 n.1 (W.D. Pa. Dec. 2, 2009) ("a criminal defense attorney is not acting under color of state law for purposes of 42 U.S.C. § 1983").

[57] *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

[58] *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)) (internal quotations omitted).

constitutional question beyond debate.[59] This standard gives government officials "ample room for mistaken judgments," protecting "all but the plainly incompetent or those who knowingly violate the law."[60]

When determining whether a clearly established right was violated, the courts should look, not to a high level of generality, but to the specific context in which the alleged violations occurred. The inquiry, therefore, is "whether the violative nature of *particular* conduct is clearly established," and, consequently, whether it would be clear to a reasonable officer that his or her conduct was unlawful under the circumstances.[61] For a defendant government official to be on notice that his or her conduct is constitutionally prohibited, there must be "sufficient precedent … factually similar to the plaintiff's allegations."[62]

With regard to Plaintiff's allegations, it is certainly true that the parent-child relationship is afforded constitutional protection.[63] Rights relating to the parent-child relationship arise, by and large, in the context of the permanent termination of such relationships, such as in adoption or where the state takes custody of a child. Even in such situations, though, the rights of parents relating to raising their children are not absolute, nor are they "beyond regulation [by the state] in the public interest."[64]

---

[59] *Al-Kidd*, 563 U.S. at 741.

[60] *Malley v. Briggs*, 475 U.S. 335, 341, 343 (1986).

[61] *Al-Kidd,* 563 U.S. at 742.

[62] *McLaughlin v. Watson*, 271 F.3d 566, 572 (3d. Cir. 2001).

[63] The First Amendment, for example, protects "an individual's right to enter into and maintain intimate or private relationships free of state intrusion." *Pi Lambda Phi Fraternity, Inc. v. University of Pittsburgh*, 229 F.3d 435, 441 (3d Cir. 2000). Additionally, the Due Process Clause protects parents' right to make decisions concerning the care, custody, and control of their children. *Troxel v. Granville*, 530 U.S. 57, 66 (2000) (plurality opinion); *Stanley v. Illinois*, 405 U.S. 645, 651 (1972).

[64] *Prince v. Massachusetts*, 321 U.S. 158, 166 (1944); *see also Croft v. Westmoreland Cty Children and Youth Services*, 103 F.3d 1123, 1125-26 (3d Cir. 1997) (the disruption or disintegration of family life that results from a child-abuse investigation will not, alone, constitute a constitutional deprivation); *Louisiana Debating and Literary Ass'n v. City of New Orleans*, 42 F.3d 1483, 1498 (5th Cir. 1995) ("the constitutional right of private association is not protected absolutely against infringement by the state.").

The particular circumstances of this case do not provide any basis for Plaintiff's constitutional claims against Creedon or Durning. Plaintiff asserts that Creedon improperly proceeded with D.H.'s case, knowing that "no notification was given to the custodian parent (plaintiff) or any parent."[65] However, even if, as Plaintiff alleges, Creedon was informed that Plaintiff was the proper guardian, Plaintiff did not provide the probation office with a phone number or address by which to reach him,[66] and the letter that Miles provided to the probation office stated that D.H. and Plaintiff moved and their location was "unknown at this time."[67] Moreover, although Plaintiff alleges that he was not notified, he admits that notice was sent to the address where he resided with D.H. and Miles.[68] He also testified that he was made aware of many, if not all, of D.H.'s court hearings before they occurred, and chose not to attend because he thought the process should be invalidated and was "angry about the fact that [he] was never notified."[69] Rather than attend his son's hearings, Plaintiff's testimony made clear that he was preoccupied with what he interpreted as inadequate communication by the police who allowed D.H. to go home with his grandmother, and that as a result, he "didn't think about … the hearing";[70] "none of that stuff mattered – none of that stuff counted."[71]

In contrast, D.H.'s mother, Andrea Howard, who Plaintiff acknowledges also had "control over the care, custody and control" of D.H.,[72] attended at least two of D.H.'s hearings[73]

---

[65] Third Am. Compl. [Doc. No. 54] ¶ 29.

[66] *See* Third Am. Compl. [Doc. No. 54]. Plaintiff also testified that he did not provide his Maryland address, where he alleges he was living for part of the relevant time-period, because "I was upset at the fact that, I hadn't been contacted. I didn't think about … the hearing, itself." Tr. Hr'g on Prelim. Inj. [Doc. No. 53] at 67-68.

[67] Def's. Ex. 1 [Doc. No. 42] ¶ 4; *see also* Third Am. Compl. [Doc. No. 54] ¶ 22.

[68] Third Am. Compl. [Doc. No. 54] ¶¶ 5, 15, 20; Tr. Hr'g on Prelim. Inj. [Doc. No. 53] at 38, 76-77.

[69] Tr. Hr'g on Prelim. Inj. [Doc. No. 53] at 46, 50-51, 58-59, 61-62; 84-85.

[70] *Id.* at 68.

[71] *Id.* at 73.

[72] Resp. to Def.s' Creedon and Durning Mot. to Dismiss [Doc. No. 60] at 3.

and explained that she received notices for D.H.'s hearings because she provided her address and phone number at D.H.'s intake hearing, which she attended in person.[74] In fact, Andrea Howard testified that, at the intake hearing, someone from the Juvenile Probation and Parole Department asked if a parent was there, and that they "knew [she] was there, they knew [she] was a parent."[75]

Furthermore, Plaintiff's parental rights were not terminated by the state; rather, his son was prosecuted as a juvenile delinquent in juvenile court proceedings.[76] These juvenile proceedings were open to D.H.'s family members which could, and did, participate in them, except for Plaintiff.[77] Thus, Plaintiff cannot prevail on his constitutional claim in this case.[78]

Even if the constitutional protection of the parent-child relationship extended to the circumstances of Plaintiff's case, it cannot be viewed as "clearly established" so as to deprive Defendants of qualified immunity. The level of family support at the hearings for D.H., the fact that notice of the hearings were sent to the address where Plaintiff was living with D.H. and Miles, and the lack of any alternative means to contact Plaintiff, establish that there is no basis for determining that a "reasonable official would understand that what he is doing violates" any

---

[73] Tr. Hr'g on Prelim. Inj. [Doc. No. 53] at 101.

[74] *Id.* at 104.

[75] *Id.* at 92-93.

[76] Third Am. Compl. [Doc. No. 54] ¶ 45.

[77] *Id.* ¶¶ 27, 31.

[78] In addition to the violations of constitutional provisions that protect the parent-child relationship, Plaintiff asserts violations of the Equal Protection Clause and the Fourth Amendment. Because Plaintiff did not allege any facts to suggest he had been treated differently from persons similarly situated, Plaintiff's complaint fails to state an Equal Protection claim. *See* U.S. Const. Am. XIV; *City of Cleburne, Tex. V. Cleburne Living Center*, 473 U.S. 432, 439 (1985) ("The Equal Protection Clause … is essentially a direction that all persons similarly situated should be treated alike."). Plaintiff similarly fails to state a claim under the Fourth Amendment as he does not allege any improper search or seizure. *See* U.S. Const. Am. IV.

right alleged by Plaintiff. Therefore, Defendants Creedon and Durning are entitled to qualified immunity.[79]

## 2. Federal Claims Under 42 U.S.C. §§ 1985, 1986

Plaintiff alleges that all Defendants violated 42 U.S.C. §§ 1985 and 1986 by conspiring and working together to harm him and his son.[80] To assert a claim under 42 U.S.C. § 1985, a plaintiff must allege a conspiracy, the purpose of which is to deprive a person of the equal protection of the laws or of equal privileges and immunities under the law.[81] "[A] plaintiff must allege both that the conspiracy was motivated by discriminatory animus against an identifiable class and that the discrimination against the identifiable class was invidious."[82] Mere conclusory allegations of deprivations of constitutional rights are insufficient to state a § 1985(3) claim.[83]

---

[79] Plaintiff also seeks to enjoin Defendants from enforcing actions against D.H., to have the actions and judgments against D.H. declared null and void, and to have the Court require Defendants to adopt policies to ensure that parents are contacted when their minor children are accused of causing injury. Third Am. Compl. [Doc. No. 54] at 20-21.

Plaintiff, however, lacks standing to pursue these claims, as the proceedings against Plaintiff's son do not injure Plaintiff. A plaintiff seeking injunctive relief must show that the action in question constitutes an "actual and imminent" threat to injure the plaintiff in a "personal and individual way." *Summers v. Earth Island Institute*, 555 U.S. 488, 493, 497 (2009); *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1548 (2016) (internal quotation and citation omitted). The juvenile proceedings affect not Plaintiff, but his son, who is now a legal adult. Indeed, Plaintiff's son has filed separately a case in this Court asserting allegations nearly identical to those asserted by his father in this case. *See Howard v. Chester Cty Office of Juvenile Prob. and Parole, et al.*, Civil Action No. 18–03997 (E.D. Pa.). Even if Plaintiff suffered an injury when his son was a minor, there is no threat that such an action will again cause him injury, making his claim for injunctive relief improper. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 105–106 (1983).

Similarly, Plaintiff lacks standing to require Defendants to institute a policy ensuring that parents of minor children accused of damaging property are notified in the future. Plaintiffs son is no longer a minor child, and Plaintiff has not alleged an "actual or imminent threat" that Plaintiff will not receive such notification regarding another minor child. *See Earth Island Institute*, 555 U.S. at 493, 496.

[80] Third Am. Compl. [Doc. No. 54] ¶ 46c.

[81] *Farber v. City of Paterson*, 440 F.3d 131, 134 (3d Cir. 2006).

[82] *Id.* at 135.

[83] *D.R. v. Middle Bucks Area Vocational Techn. Sch.*, 972 F.2d 1364, 1377 (3d Cir. 1992) (internal quotations and citation omitted).

The plaintiff must also allege specific facts to state a plausible claim that an actual agreement existed among the defendants.[84]

The only claim that Plaintiff makes relating to discrimination against an identifiable class is his assertion that IEPs are "specifically aimed at black youth" and his son's IEP therefore, according to Plaintiff, caused D.H. to be treated harshly.[85] This conclusory allegation alone, however, relates only to the School District, and not the other Defendants who have moved for summary judgment, and nothing in the record or in Plaintiff's Third Amended Complaint suggests that Plaintiff was deprived of the equal protections of laws, or that any Defendants were motivated by discriminatory animus.[86] Without any facts to suggest any such deprivation, let alone a conspiracy among Defendants to cause such a deprivation, Plaintiff's § 1985 claim fails and will be dismissed. Additionally, even if Plaintiff had properly alleged a conspiracy under § 1985, the claim would not be properly brought by Plaintiff because the alleged conspiracy relating to D.H.'s IEP, if proven, could only injure D.H., and not Plaintiff.[87] Because a violation of § 1986 cannot be established without first showing a violation of § 1985, Plaintiff's § 1986 claim will be dismissed as well.[88]

### 3. Federal Statutory Claims Related to Privacy and Disability

Plaintiff alleges that the Office of Juvenile Probation and Parole, and Creedon and Durning, used private information relating to D.H.'s alleged disability in his juvenile

---

[84] *Muhammad v. Cappellini*, 477 Fed. App'x 935, 938 (3d Cir. 2012).

[85] Third Am. Compl. [Doc. No. 54] ¶ 46.

[86] In particular, although Plaintiff asserts that law enforcement discriminates against black children who have IEPs, he does not allege that the police officers in this case were even aware that D.H. had an IEP. *See* Third Am. Compl. [Doc. No. 54] ¶ 46.

[87] *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

[88] § 1986 provides a cause of action against anyone who "having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 … are about to be committed and having power to prevent or aid … neglects to do so." 42 U.S.C. § 1986.

proceedings in violation of four federal statutes: The Americans with Disabilities Act ("ADA"), the Families Educational Rights and Privacy Act (FERPA), the Privacy Act of 1974, and the Individuals with Disabilities Education Act ("IDEA").[89] The record makes clear that Plaintiff cannot state a claim against the Office of Juvenile Probation, or its officers, under any of these statutes.

First, the FERPA does not create a private right of action and the statute is not enforceable by § 1983.[90]

Second, the Privacy Act of 1974 does not apply to state or municipal agencies or their employees, and therefore Plaintiff cannot bring such a claim against the Office of Chester County Office of Juvenile Probation and Parole, and the Office's employees, Melissa Creedon and Jamie Durning.[91]

Third, Plaintiff has not shown that his allegation regarding the Office of Juvenile Probation's receipt of D.H.'s IEP records is cognizable under the IDEA, which ensures "that all children with disabilities have available to them a free appropriate public education."[92] Moreover, the IDEA provides for administrative procedures to enforce the rights it created, and consequently, an IDEA claim cannot be brought in federal court until the administrative process has been exhausted.[93] Plaintiff appears to have been aware of the administration of the IEP to an extent; Andrea Howard testified that Plaintiff went to one of the IEP review hearings with school administrators.[94] However, Plaintiff does not suggest that he has pursued any administrative

---

[89] Third Am. Compl. [Doc. No. 54] ¶ 47.

[90] *Gonzaga University v. Doe*, 536 U.S. 273, 287–89 (2002).

[91] *Hatfield v. Berube*, 714 Fed. App'x 99, 106 (3d Cir. 2017).

[92] 20 U.S.C. § 1400(d)(1)(A).

[93] 20 U.S.C. § 1415(i)(2)(A); *Batchelor v. Rose Tree Media School Dist.*, 759 F.3d 266, 272 (3d Cir. 2014).

[94] Tr. Hr'g on Prelim. Inj. [Doc. No. 53] at 110.

proceedings to address any of the issues he now raises, and his claim under the IDEA will therefore be dismissed.

Finally, the ADA prohibits discrimination against a "qualified individual with a disability," and Plaintiff does not allege that he has any disability.[95] Individuals who are not disabled may still have standing under the ADA if they suffer discrimination because of their association with another individual who is disabled,[96] but Plaintiff does not allege that he was discriminated against as a result of his association with his son, who, according to Plaintiff, "is said to suffer from a disability."[97]

### 4. State Law Claims

#### a. The Pennsylvania Constitution

Plaintiff alleges violations of Article 1 §§ 8 and 26 of the Pennsylvania Constitution. Article 1 § 8 protects an individual's right to be free from "unreasonable searches and seizures."[98] Article 1 § 26 of the Pennsylvania Constitution is Pennsylvania's "non-discrimination clause"[99] and is analyzed "under the same standards used by the United States Supreme Court when reviewing equal protection claims under the Fourteenth Amendment to the United States Constitution."[100]

---

[95] *See* 42 U.S.C. § 12132.

[96] *R.S. By R.D.S. v. Butler Cty, Pennsylvania*, 700 Fed. App'x 105, 109–10 (3d Cir. 2017).

[97] Third Am. Compl. [Doc. No. 54] ¶ 34. Plaintiff asserts that D.H.'s IEP is relates to a disability without clarifying what that alleged disability is.

[98] Pa. Const. Art. 1 § 8.

[99] *Fischer v. Department of Public Welfare*, 502 A.2d 114, 123 (Pa. 1985).

[100] *Love v. Borough of Stroudsburg*, 528 Pa. 320, 325 (Pa. 1991).

The record does not contain any facts to suggest that Plaintiff has been discriminated against or treated differently from persons similarly situated,[101] or that he was the subject of a search or seizure. Therefore, his claims under the Pennsylvania Constitution fail as a matter of law.

### b. Negligence

Plaintiff claims that D.H.'s attorneys were negligent in their representation of D.H.[102] Defendants state that Plaintiff's professional negligence claim must be dismissed because they had no attorney-client relationship with Plaintiff and therefore owed him no duty.

Generally, to maintain a legal malpractice case, an attorney-client relationship must exist between the parties.[103] Such a relationship may be implied from the parties' conduct where it "evidence[s] an offer or request by the client for legal services and an acceptance of the offer by the attorney."[104] Although a third party may bring a suit against an attorney for negligence "if the attorney knew that the third party 'was relying on him in his professional capacity,'" an attorney's mere negligence toward a non-client is not actionable.[105]

Even making all inferences in favor of Plaintiff, there is no basis in the record on which to find an attorney-client relationship between Plaintiff and Defendant attorneys. Defendants did

---

[101] *See Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992) (The Equal Protection Clause prevents "governmental decisionmakers from treating differently persons who are in all relevant respects alike").

[102] Third Am. Compl. [Doc. No. 54] ¶ 52.

[103] *Connelly v. Wolf, Block, Schorr and Solis-Cohen*, 463 F. Supp. 914, 918 (E.D. Pa. 1978); *Guy v. Liederbach*, 459 A.2d 744, 748 (Pa. 1983).

[104] *Connelly*, 463 F. Supp. at 919; *see also Pettit v. Smith*, 241 B.R. 847, 850 (E.D. Pa. 1999) (holding that under Pennsylvania law, a legal malpractice plaintiff must prove: 1) the employment of the attorney or other basis for duty; 2) the failure of the attorney to exercise ordinary skill and knowledge; and 3) that such negligence was the proximate cause of damage to the plaintiff).

[105] *Guy*, 459 A.2d at 748 (citing *Lawall v. Groman*, 180 Pa. 532, 540 (Pa. 1897)); *see also Connelly*, 463 F. Supp. at 918 ("In order for a plaintiff to recover against a defendant law firm in a legal malpractice case, it is generally essential that an attorney-client relationship have existed between the parties").

not represent Plaintiff, and Plaintiff did not hire them to represent his son.[106] As there are no facts that suggest an actual or implied attorney-client relationship between Plaintiff and Defendants, Plaintiff's claim of negligence will be dismissed.

## B. THE SCHOOL DISTRICT'S MOTION TO DISMISS ALL COUNTS

The factual allegations involving the School District are few, and concern only its alleged disclosure of information related to D.H.'s IEP to other Defendants, and the continued use of an IEP for D.H. at school. Based on these allegations, Plaintiff has filed suit against the School District under the United States Constitution, federal statutes, the Pennsylvania Constitution, and common law.

As an initial matter, the federal statutory claims related to privacy and disability (including the ADA, FERPA, the Privacy Act,[107] and the IDEA[108]) will be dismissed because, as previously stated, Plaintiff either lacks standing, has failed to allege any basis for these claims, or has not exhausted administrative remedies. Additionally, although Plaintiff asserts that his claims under the Pennsylvania Constitution are against "all Defendants,"[109] he has not alleged that the School District engaged in any conduct that could conceivably be interpreted as an unreasonable search or seizure or as discrimination against Plaintiff, and such claims will not be entertained.

### 1. Federal Claims Under 42 U.S.C. §§ 1983, 1985, and 1986

Plaintiff claims that the School District violated the Equal Protection Clause and the Due Process Clause of the Fourteenth Amendment, and the Fourth Amendment, by releasing private,

---

[106] Third Am. Compl. [Doc. No. 54] ¶ 27; Tr. Hr'g on Prelim. Inj. [Doc. No. 53] at 57-58.

[107] As noted above, the Privacy Act does not apply to state agencies, such as a school district, or its employees.

[108] Plaintiff failed to state a cognizable claim under the IDEA against other Defendants. The IDEA claim, as it relates to the School District, however, is dismissed solely for failure to exhaust administrative remedies, because Plaintiff does not allege he pursued any administrative remedies to address his present complaints. Therefore, the IDEA claim against the School District is dismissed without prejudice.

[109] Third Am. Compl. [Doc. No. 54] ¶¶ 48,49.

sensitive information about D.H.'s alleged disability to the Office of Juvenile Probation and Parole without notifying D.H.'s parents, and by using Miles's signature to continue D.H.'s IEP.[110] The School District correctly asserts that it is considered a municipality,[111] and therefore, a plaintiff must allege that the injury was a result of a government policy or custom.[112] In his Third Amended Complaint, Plaintiff does not allege any facts to suggest that the School District released information about D.H.'s IEP, or continued the IEP with only D.H.'s grandmothers' consent, pursuant to any official policy or custom, and therefore, Plaintiff's § 1983 claim against the School District will be dismissed.

Additionally, as Plaintiff has not alleged any discriminatory animus by the School District, any factual basis to suggest that a conspiracy existed among Defendants, or that any such conspiracy would injure Plaintiff, as opposed to D.H., his § 1985 and § 1986 claims against the School District will be dismissed.

### 2. Intrusion Upon Seclusion[113]

Plaintiff claims that the School District's release of his son's school records, which included his son's record of a disability, to the Chester County Office of Juvenile Probation constitutes an intrusion upon seclusion.[114] The tort of intrusion upon seclusion occurs when a defendant "intrudes into a private place, or otherwise invades a private seclusion about *a plaintiff's* person or affairs."[115] Defendant School District correctly states that the actions alleged

---

[110] Third Am. Compl. [Doc. No. 54] ¶ 47.

[111] *Lytle v. Carl*, 382 F.3d 978, 982 (9th Cir. 2004) (school districts are "local governing bodies" and their liability is limited by *Monell*).

[112] *Monell v. Dept. of Social Services of City of New York*, 436 U.S. 658, 694 (1978); Mot. to Strike and to Dismiss Third Am. Compl. [Doc. No. 61] at 10–11.

[113] This claim is made against the School District only. Third Am. Compl. [Doc. No. 54] ¶ 53.

[114] *Id.* ¶ 53.

[115] *DeBlasio v. Pignoli*, 918 A.2d 822, 825 (Commw. Ct. Pa. 2007) (emphasis added) (citation omitted); *see also Boring v. Google Inc.*, 362 Fed. App'x 273, 278-79 (3d Cir. 2010).

by Plaintiff do not intrude on Plaintiff's own seclusion, but on his son's.[116] Therefore, Plaintiff's claim for intrusion upon seclusion will be dismissed.

## IV.    CONCLUSION

For the reasons stated above, Defendants' motions for summary judgment and the School District's motion to dismiss are granted. Plaintiff's IDEA claim against the School District is dismissed without prejudice for failure to exhaust administrative remedies. Because three amended complaints have been filed and leave to amend would be futile, the remainder of Plaintiff's claims are dismissed with prejudice. An Order follows.

---

[116] *See* Mem. Supp. Def. Tredyffrin/Easttown School District's Mot. to Dismiss [Doc. No. 61] at 15.